ERNEST E. PARKER *v.* W. C. WOOD LUMBER COMPANY.

[54 South. 252.]

1. MASTER AND SERVANT. *Defective appliances. Knowledge of defects. Inspection. Contributory negligence.*

As a general rule a servant is not required to inquire into the sufficiency of tools provided him by the master, but he may assume that they are suitable and safe, and it is only when circumstances make it the duty of the servant to inquire, that it is contributory negligence on his part not to do so.

2. MASTER AND SERVANT. *Knowledge of defects.*

Where the means of knowledge of the servant is equal to that of the master, the master has no right to assume that the servant will use such means of knowledge to ascertain the defects of appliances furnished him, because it is not the duty of the servant to inquire into the sufficiency of such things; the servant has the right to rely upon the master's duty so to inquire.

3. SAME.

Where the appliance is a tool of simple and common and ordinary use and the defect is obvious and patent, the rule requiring the master to inspect does not apply.

4. MASTER AND SERVANT. *Simple tool. Cant hook.*

A cant hook as described in the evidence in this case is not such a simple tool as to relieve the master from his duty to inspect.

5. KNOWLEDGE OF DEFECTS. *Evidence.*

In determining whether a servant knew or ought to have known of the defect of appliances used by him, it is proper to look not only to his

testimony on that point but to all the evidence as to the extent of his use of such tools and his familiarity with same, or tools of similar kind.

6. CONTRIBUTORY NEGLIGENCE.  *Jury.*

Where the evidence of the contributory negligence of the servant is uncertain, it is a question for the jury.

APPEAL from the circuit court of Covington county.

HON. R. L. BULLARD, Judge.

Suit by Ernest E. Parker against the W. C. Wood Lumber Company. Judgment for defendant and plaintiff appeals.

The record shows that, it was part of plaintiff's duty to place pieces of timber on the rollers to be carried to a saw for cutting. Where timbers were large, implements known as "cant hooks" were used by laborers with which to place such timbers. The cant hook consisted of a large handle made of wood, over which an iron cuff was slipped and fastened a few inches from the bottom. Into this cuff a hook shaped something like a fish hook was fastened by a bolt, so as to give it play. It was operated by hand; the operator catching hold of the handle and placing the hook on the log and using the implement as a sort of lever. The particular hook in question was defective in this: That the cuff was not fastened to the handle, the bolt or screw having come out, so that, when plaintiff attempted to use it and threw his weight against the handle, the cuff slipped and he was thrown, injuring his leg, so that amputation became necessary.

*R. N. Miller,* for appellant.

It is ancient law, well understood, that the master is bound not only to furnish his servant with reasonably safe appliances in safe condition, but he is also bound by frequent inspections and attentions to keep them in such reasonably safe condition, and that the servant is not

bound to make inspection in the first instance but may rely upon the performance of his duty by the master, and assume that the instrument furnished him is in a reasonably safe condition. Citation of authority is unnecessary upon these elemental principles.

The court below gave a peremptory charge for the defendant, not because the plaintiff had not made out a perfect case by showing that he was injured because of a breach of the master's duty to furnish him with a safe implement and appliance, but solely and alone because the court thought that a cant hook was not one of those implements and appliances which the master's duty bound him to inspect, and the cant hook was what is called a "simple appliance" which the servant in using it had better opportunity than the master to know its defects. I admit there is authority for this position, that the master's duty to inspect does not extend to what is called "simple appliances," while in use, and the master may rely upon the presumption that when they were out or become defective, the servant will first discover the defect. See vol. 20 Am. and Eng. Ency. Law, 2nd Ed., page 89, note 3. It is therefore the only question in the case, is the cant hook such simple appliance or tool?

If it is not such tool, then the court erred and this case must be reversed; again if it was a question of fact, connected with the manner of its use, then it was for the jury and the case must be reversed.

At page 82, vol. 20 Am. and Eng. Ency. Law, 2nd Ed., it is stated:

"The general rule requiring the master to furnish reasonably safe and suitable machinery and appliances has been applied in cases where injuries resulted while using the following appliances and machinery: Brakes, break chains, break beams, brake pins, brake wheels, brake staffs, bents, boilers, cables, chains, coal of inferior quality, cranes, derricks, engines, flanges, fans, gearing, hame straps, hammers, hooks, horses, hosepipe, ice tongs,

kettles, ladders, lanterns, mauls, pile drivers, poles, reaping penants, rollers, ropes, shafts, skids, shaperheads, tackles, turntables, wires, wagons,'' etc.

A large number of cases are cited in the notes in which the defects in these various appliances were held negligence of the master, and that the duty of inspection was on him for the same.

*Flowers, Fletcher & Whitfield,* for appellee.

The action of the trial judge in excluding the evidence and giving a peremptory instruction for the defendant may be sustained upon several different views or theories of this case.

In the first place the cant hook is a very simple implement. It is not so intricate as to allow hidden defects. There is nothing concealed about it. Every part is obvious to the senses. It needs no inspection, that is no such as is called for by the use of complicated machinery or implements made up of numerous pieces. It is nothing but a piece of wood with a piece of iron tied to it. It is a hook and a handle. Whether the hook is loose on the handle would be determined simply by picking the implement up, and using it or handling it. It would not have to be taken apart. No piece of it would have to be detached from the other pieces. Whatever its condition is may be ascertained from a simple handling of the instrument. If there is a defect it is on the outside. It needs no expert to determine whether it is in usable condition. The novice as well as the professional can say whether it is in good condition. And it is well settled that the character of the instrument determines the extent of the necessary inspection. The master is supposed by special inspection and care to discover and remedy defects which are not open and obvious. The employes or servants using the implements are expected to know the obvious defects and remove them themselves or report them. *Miller* v. *Erie R. R. Co.,* 21 N. Y. App. Div.

45 (1897); *Marsh* v. *Chickering et al.*, 101 N. Y. 396; *Waschsmuth* v. *Electric Crane Co.*, 118 Mich. 275; *Lyon* v. *Glucose Sugar Refining Co.*, 128 Iowa 501, 104 N. W. 577; *Wachsmuth* v. *Shone Electric Crane Co.* (Mich.), 76 N. W. 497; *Marsh* v. *Chickering*, 110 N. Y. Supp. 285; *Georgia R. R. Banking Co.* v. *Nelms*, 83 Ga. 70, 9 L. E. 1049, 20 Am. St. Rep. 308; *Martin* v. *Highland Park Mfg. Co.*, 128 N. C. 264, 38 S. E. 867, 83 Am. St. Rep. 670; *Talley* v. *Reeves* (Tex.), 78 S. W. 23; *R. R. Co.* v. *Liahe*, 29 Pac. 175, 176; *Stork* v. *Stolper Cooperage Co.*, 7 Am. and E. Ann. Cas. 339 and note, pp. 342-343.

Argued orally by *J. N. Flowers,* for appellant.

WHITFIELD, C.

It is earnestly insisted by the appellee, which obtained a peremptory instruction in the court below, after the evidence for the plaintiff was in, that the cant hook in question is a tool of so simple and common and ordinary use as that the servant had equal opportunity of ascertaining any defect in it with the master, and that consequently with respect to such simple tool, of such ordinary and common use, the rule requiring the master to inspect tools furnished the servant does not apply. For a full discussion of this doctrine, see Labatt on Master and Servant, vol. §§ 405, 406, 407. From that discussion, it will be seen that this doctrine is said to be well settled in some jurisdictions; but it is also expressly laid down that it has no application in the case of such simple tool, except where the defect in the tool is obvious or patent.

We call special attention to two extracts from that discussion, found at the close of section 407. It is there said: "As a matter of ultimate analysis, it will be found that the logical basis of the doctrine which thus places the master and the servant upon different footings in regard to imputed knowledge of risks is to be found in the fact that it is the special and appropriate function

of the former to furnish and supervise the instrumentalities of his business, and the special and appropriate function of the servant to use those instrumentalities. The duty of making a reasonably careful examination of the instrumentalities is a natural and necessary incident of the former function, but not of the latter." "In the opinion of the present writer, the practice of comparing the master's and the servant's means of knowledge has been productive of much confusion of thought, which is apt to operate to the servant's disadvantage by imposing upon him too high a standard of care. It would have been far preferable to refrain from importing into the discussions in. this class of cases an element which is wholly unnecessary, inasmuch as the ultimate question, in every instance, must be, simply, whether a person who had the same natural and acquired capacities for observation, and had been placed in the same position as the servant, would have discovered the danger by the exercise of ordinary care. The extent of the obligatory knowledge of the master under the given circumstances seems to be a wholly irrelevant consideration."

Again it is said in *Magee* v. *North Pacific Coast Railway Company,* 78 Cal. 430, 21 Pac. 114, 12 Am. St. Rep. 69, that the true rule has been stated by Shearm. & Redfield on Negligence (4th Ed.), § 217, as follows: "It has been often said that the master is not liable for defects in such things to a servant whose means of knowledge thereof were equal to those of the master. But this is an erroneous statement. The master has no right to assume that the servant will use such means of knowledge, because it is not part of the duty of the servant to inquire into the sufficiency of these things. The servant has a right to rely upon the master's duty so to inquire; and the servant may justly assume that all these things are fit and suitable for the use which he is directed to make of them. The true definition. is that, when circumstances

make it the duty of the servant to inquire, it is contributory negligence on his part not to inquire."

It is true Labatt criticises this to some extent, but in our opinion it states the rule logically and correctly. Even in the case of a simple tool, the question comes to this: Did the servant know of the defect in the tool, or ought he to have known of it by the use of ordinary care? The doctrine so called does not seem to us to be any new doctrine, properly considered, but merely a new application of the very old doctrine of contributory negligence. In the twentieth volume of the second edition of the American and English Encyclopedia of Law, at pages 82, 83, and 84, instances are cited from a large number of cases of tools not deemed simple within the meaning of this rule. In that list of cases are included "chairs, hame straps, hammers, hooks, kettles, ladders, mauls, poles, ropes," etc. Surely all these tools just mentioned are much less simple in their structure than the cant hook such as it is shown to be by the testimony in this case. After the most careful consideration, we are of the opinion that the cant hook in this case cannot be classed properly as one of these simple tools within the meaning of this doctrine.

This leaves open for consideration the single inquiry: Was the plaintiff guilty of contributory negligence, barring recovery in this case? We have examined the testimony again and again on this point. It is true that in his direct examination Parker stated that to the best of his knowledge the cant hook by which he was injured was the same hook he had used the day before the injury; and he also said that he had worked with that hook some two or three months, and that he had worked for the mill something over a year and at another sawmill in Montgomery county for two years, and that he had had considerable experience with cant hooks. But on cross-examination be said twice that he saw nothing wrong with the hook the day before, and that it was apparently a

good hook, and finally he said he couldn't swear that he saw this identical hook a day or two before, and at last he said, when asked if it was the same hook, as far as he knew, he said, "Not that I know of." On the particular point, then, as to whether the hook with which he was injured was the same hook he had used the day before it cannot fairly be said that he admitted that it was the same hook, at least his testimony on this point is in great confusion.

As to the point that the defect, which defect consisted of the fact that there was no nail or bolt in the hole in the top of the cant hook, fastening the cuff rigidly to the cant hook, he said as to the point that the defect was patent and obvious, and could not be seen at a glance by any one, when pressed, "Why I don't know, I couldn't say just by a mere glance;" that is, he could not say that he could see the defect at a mere glance. He did say that he supposed a man picking it up and looking for the hole could see it, but he did not suppose that a man just picking it up would. What he did was just simply to pick it up and use it. So far, therefore, as the testimony of the plaintiff himself is concerned, it cannot be said to be clearly established, either that the cant hook with which he was injured was the same one he had used the day before, or that the defect in it was so open and obvious that he could have seen the defect by a mere glance. It is true that Conner, another of plaintiff's witnesses, did say that the cant hook was in such condition that it could be discovered by a mere glance at it; but this testimony, like the testimony of the plaintiff, was for the jury.

If, in this case, the defect in the cant hook was so obvious that the plaintiff did know of the defect, or by the use of ordinary care ought to have known of it, then he is precluded from recovery by his own contributory negligence. In determining whether he did know, or by the use of ordinary care ought to have known, of the

defect, it is proper to look, not only to his testimony directly on that point, but to all the evidence showing the extent of the use he had made of this cant hook, and the extent of his familiarity with cant hooks just like this one.   But whether the evidence all looked to and properly weighed, shows that he did not know, or by the use of ordinary care ought to have known, of the defect, is, we feel constrained to hold, under our decisions, a question of fact for the jury.   Therefore we are of the opinion that, on the testimony in this record, the case should have gone to the jury.        *Reversed and remanded.*

PER CURIAM.   The above opinion is adopted as the opinion of the court, and, for the reasons therein indicated, the judgment is reversed, and the cause remanded for a new trial.