GULF, M. & N. R. Co. *v.* GRAHAM.*

(Division B. June 11, 1928. Suggestion of Error Overruled Aug. 24, 1928.)

[117 So. 881. No. 27156.]

*Corpus Juris-Cyc References:  Death, 17CJ, p. 1311, n. 49; p. 1314, n. 75; p. 1325, n. 95; Evidence, 22CJ, p. 420, n. 75; Master and Servant, 39CJ, p. 271, n. 78; p. 342, n. 20; p. 1011, n. 17, 18; p. 1012, n. 42; p. 1108, n. 22; Trial, 38Cyc, p. 1880, n. 43.

*W. S. Welch, Ellis B. Cooper* and *Roy P. Nobel,* for appellant.

*Collins & Collins* and *J. L. Thompson,* for appellee.

Argued orally by *Ellis B. Cooper,* for appellant, and *Jeff Collins,* for appellee.

ANDERSON, J. The appellee as administratrix of the estate of Billie Graham, alias Billie Ulmer, deceased, brought this action in the circuit court of the second district of Jones county, against appellant, to recover damages for the death of the said Billie Graham, alleged to have been caused by the negligence of appellant. There was a trial, resulting in a verdict and judgment for appellee in the sum of five thousand dollars, from which judgment appellant prosecutes this appeal.

Besides the general issue, appellant pleaded that, if any one was responsible for the injury and death of the decedent, it was not appellant, but the Jackson & Eastern Railroad Company, by which the deceased was employed at the time of his injury and death.

It is undisputed in the evidence that at the time of his death the deceased was engaged as a member of a con-

struction crew, in construction work on the Jackson & Eastern Railroad, between Union and Jackson, in this state. He was operating a track jack. With it he was jacking up a rail on the Jackson & Eastern Railroad. A track jack in railroad construction is used in lifting railroad tracks. It has cogs on a ratchet, and there is a handle, from four to six feet in length, on which the power is brought to bear in order to jack up the load. The evidence tended to show that the deceased was using one of these jacks; that it was defective, in that two of the cogs on the ratchet had been broken off; that the deceased was jacking the track up when the missing cogs caused the jack to trip, resulting in his being struck in the stomach with great force with the handle of the jack, throwing him across the jack. This occurred probably about eight o'clock in the morning. He complained of being hurt, but continued his labors until noon, when he was taken to the camp of the construction crew, where a physician attended him. He was afterwards carried to the general hospital in Laurel, in this state, where he died two days later.

At the time of his injury, the deceased was twenty-two years of age, earning two dollars and fifty cents a day. The evidence tended to show that he was a strong, able-bodied man, except he was afflicted with hernia, commonly referred to as rupture. His mother received for her support contributions from the deceased of about two hundred dollars a year. In addition to such contributions, when he was at home he rendered her services about the home.

At the threshold there arises for decision the question whether at the time of deceased's injury he was in the employ of appellant and serving appellant as such, or whether that relationship existed between the Jackson & Eastern Railroad Company. Putting it differently, at the time of the injury of the deceased, did the relationship of master and servant exist between the de-

ceased and appellant, or did it exist between the deceased and the Jackson & Eastern Railroad Company?

The evidence touching this question was substantially as follows: When injured the deceased was a member of the railroad construction crew of which Cooper was foreman and Brogan straw boss, and so was Allen Craig, who was an important witness in the case. This construction crew consisted of several persons (how many is not shown by the evidence, and is not material). The equipment of the crew consisted of one or more railroad engines (the number shown by the evidence is indefinite), camp cars, and the usual tools and implements, including track jacks used by such crews in the construction and repair of railroads. This entire railroad construction outfit, including engines, cars, and tools of every kind, belonged to appellant, and, up to a short time before the deceased was injured, constituted one of appellant's construction crews, with which appellant's railroad was maintained. Shortly before the injury complained of, appellant ordered this construction crew to move onto the Jackson & Eastern Railroad, between Union and Jackson, in this state, and thereupon, under the direction of Cooper and Brogan, the straw boss, the crew was moved off of appellant's line of railroad onto that of the Jackson & Eastern Railroad, and proceeded to carry out appellant's instructions. While the crew was so engaged, as stated, the deceased was injured.

The evidence for appellee tended to show that the railroad construction crew were being paid for their services by appellant, while there was some evidence for appellant tending to show that they were being paid by the Jackson & Eastern Railroad Company; but the evidence, without conflict, showed that after the deceased's injury he was sent by appellant to the general hospital at Laurel, and after his death appellant sent his remains to Bay Springs, in this state, where he was buried. It was undisputed in the evidence that the particular jack

which it was alleged caused deceased's injury and death constituted part of the equipment of appellant's said construction crew. It was also shown without conflict that, when this construction crew had completed its labors on the Jackson & Eastern Railroad, appellant ordered it back to its own line of railroad; in other words, that the crew went to the Jackson & Eastern Railroad for certain purposes, under the direction of appellant, and when it had accomplished the object of its going, by direction of appellant it returned to appellant's line of railroad and there continued its services to appellant. Later the evidence tended to show in some way appellant acquired control of the Jackson & Eastern Railroad, and was operating it at the time of the trial of this cause.

The question whether the right defendant was sued is an issue of fact to be determined by the jury, like any other issue of fact. Whether the right defendant was sued in this case depends on the question whether there existed at the time of the injury of the deceased the relationship of master and servant between appellant and the deceased. Any competent and relevant evidence tending to prove or disprove the relationship in question was admissible. 26 Cyc. 971, par. 5; pages 1424, 1425, par. M. We think it fairly inferable from the evidence bearing on this question that the Jackson & Eastern Railroad Company employed appellant to do certain work on the line of the railroad of the former, between Union and Jackson, in this state, and that appellant, in carrying out such contract, used and controlled its own construction crew and equipment. We think, therefore, the jury was justified in finding that to be true. Under the law, if the Jackson & Eastern Railroad Company employed appellant to do the work, and, in turn, appellant employed its own construction crew, including the deceased, to do the work for it, the relationship of master and servant existed between appellant and the members of such crew, and not as between the crew and the Jackson & Eastern

Railroad Company. It follows from these views that the trial court committed no error in refusing to direct a verdict for appellant on that ground.

Appellant contends that its request for a directed verdict should have been granted upon the further ground that the evidence was not sufficient to show that the injury received by the deceased because of the defective jack was the cause of his death. The deceased was injured on Tuesday, the 1st day of March, 1927, and died at the hospital in Laurel on Friday evening, the 4th day of March, 1927, where he was carried the day before he died. From the time of his injury until he was carried to the hospital in Laurel the deceased spent in the camp of the construction crew.

Appellant's theory is that the deceased died of hernia, with which he had been afflicted for some time, while appellee's theory is that he died of peritonitis, caused by the injury. Dr. Ramsey, testifying on behalf of the appellee, was asked the question:

"If a man working over a track jack with a lever and there is the weight of a railroad track on the lever and as the jack lever goes down the jack slips a cog or two and the lever goes up with all the force of the railroad weight on the lever and the man is hit in the stomach with the lever, is that likely to cause a rupture?"

To which he answered that it would not, but was calculated to cause an injury resulting in peritonitis, and that peritonitis would cause him to vomit, as the evidence showed deceased did, and might result in death. Allen Craig, who was with the deceased when he received the injury, testified that he was hurt and complained of being hurt when he was struck in the stomach by the lever of the jack. Testimony introduced by appellant tended to show, however, that the deceased, while in the construction crew camp, laid his illness, not to having been struck in the stomach by the handle of the jack, but to hernia, with which he was afflicted; in fact, the evi-

dence tended to show that from the time the deceased received the lick in his stomach, caused by the jack tripping, to the time of his death, he did not claim that that was the cause of his illness. But that, if true, was only the opinion of the deceased. He may have been mistaken. If he was mistaken, should that mere opinion of his preclude a recovery for his injury and death? We think not. It could not operate as an estoppel. Considering all the evidence on the question, including the opinion of the deceased as to the cause of his illness and suffering, we think it was an issue for the jury as to whether the deceased died from the effects of hernia, or of peritonitis caused by the lick in the stomach from the jack.

Appellant contends that the court should have directed a verdict in its favor because of the application of the simple tool doctrine. Appellant argues that the jack causing the deceased's injury was such a tool. The jack was described in the evidence in this case as having a lever, a cuff, a bolt, an upright casing, a ratchet, cogs, latches, and a hook with which the load was raised. In *Parker* v. *Wood Lumber Co.*, 98 Miss. 750, 54 So. 252, a canthook was held not to come within the simple tool doctrine. The canthook involved in that case consisted of a handle made of wood over which there was an iron cuff a few inches from the bottom into which cuff a hook, something like a fishhook, was fastened by a bolt so as to give it play. It was operated by hand, the operator taking hold of the handle and placing the hook on the log and using the instrument as a lever with which to move the log. We think the Parker case decisive of this question against appellant's contention. We are of opinion, therefore, that no error was committed in submitting the question of liability to the jury.

The appellant assigns and argues as error the giving of the following instruction for appellee:

"If you find for the plaintiff, you should award such compensation as damages as you believe from the evi-

dence has all the damages of every kind to the decedent, if any, and all damages of every kind, if any, to any and all parties interested in the suit. In determining what damages are just you may consider what is the net cash value of any and all compensations, if any, which would have been made to any and all parties interested in this suit, if any, had the said Billy Ulmer lived; also the pain and suffering, if any, the decedent suffered on account of the said injury, if any, and also any and all damages to his earning capacity."

It will be observed that the instruction consists of three sentences only. The first sentence, concluding with the words "interested in the suit," embodies a correct principle of law. But the other part is erroneous. By it the court sought to explain more fully to the jury the different elements of damages they should consider in making up their verdict. In that part of the instruction the court told the jury, first, that in fixing the damages they might consider the "net cash value of any and all compensations, if any, which would have been made to any and all parties interested in this suit, if any, had the deceased lived; second, also damages for the deceased's pain and suffering on account of his injury; and, third, any and all damages to his earning capacity. It should be borne in mind that the issue of punitive damages was not submitted to the jury; appellee did not ask that it be submitted to the jury. Therefore only actual damages were recoverable. And, under the evidence in the case, the only elements of actual damages were the deceased's pain and suffering, and the present net cash value of his life expectancy measured by his earning capacity. *New Deemer Manufacturing Co.* v. *Alexander,* 122 Miss. 859, 85 So. 104; *L. & N. R. R. Co.* v. *Garnet,* 129 Miss. 795, 93 So. 241. It was only from the deceased's earnings that he could have made contributions to the support of his mother. Therefore appellee was not entitled to recover the present net cash value of his

earnings, measured by his life expectancy, and, in addition, recover the amount of any contributions the deceased might have made for the support of his mother, and, further, the instruction is erroneous because of the last clause therein in this language: "And also any and all damages to his earning capacity." In the first place, there could be no damage to the deceased's earning capacity beyond its complete destruction. Appellee was not entitled to recover for physical and mental pain endured by the deceased, and the present net value of his life expectancy, measured by his earning capacity, and, in addition to those elements, damage to his earning capacity. The instruction was erroneous and calculated to mislead the jury, and may have done so in fixing their verdict.

Upon this ground alone the judgment is reversed, and the cause remanded for trial on the issue of damages alone.

Affirmed as to liability, and reversed and remanded for trial on the question of damages only.

*Affirmed.*
*Reversed and remanded.*