GULF COAST BUILDING & CONSTRUC-
TION TRADES COUNCIL and Local
Union 903, International Brotherhood of
Electrical Workers, AFL–CIO, Appel-
lants,

v.

F. R. HOAR & SON, INC., Appellee.

No. 22849.

United States Court of Appeals
Fifth Circuit.

Jan. 4, 1967.

Rehearing Denied Feb. 24, 1967.

Charles T. Sykes, Jr., Evans & Sykes, Gulfport, Miss., for appellants.

C. V. Stelzenmuller, Birmingham, Ala., George E. Morse, Gulfport, Miss., Thomas, Taliaferro, Forman, Burr & Murray, Birmingham, Ala., Morse & Morse, Gulfport, Miss., of counsel, for appellee.

Before JONES and COLEMAN, Circuit Judges, and JOHNSON, District Judge.

JOHNSON, District Judge:

This is an appeal from a jury verdict awarding plaintiff-appellee damages for defendant-appellants' violation of the so-called "secondary boycott" provision, Section 8(b) (4) of the National Labor Relations Act, 49 Stat. 449, 29 U.S.C. Section 151 et seq., as amended by the Labor Management Relations Act of 1947.

On August 17, 1964, appellee F. R. Hoar & Son, Inc., an Alabama corporation, entered into a contract with Patio Apartments, Inc., of Long Beach, Mississippi, to construct a 55-unit apartment project in Long Beach, Mississippi. Thereafter appellee subcontracted the electrical work on this project to Sperry Electric Company of Gulfport, Mississippi, which obtained this contract on competitive bids, as the most favorable responsible bidder. The plumbing subcontract was awarded to Alvin Savarese doing business as Handsboro Plumbing Company.

On November 10, 1964, appellant Local 903 established a picket line at the job site for the purpose of protesting appellee's nonunion electrical and plumbing subcontractors. Many of the union member workers stopped working that day, and on several occasions it was necessary for V. C. Handy, appellee's vice president, to fly down from company headquarters in Birmingham, Alabama, in an effort to get the project moving at full speed again. But the strike continued and progress on the job was slow. As the strike gathered momentum and the size of the picket line increased, the usual trouble ensued, to wit, ingress and egress to and from the construction site were delayed or frustrated, threats and vile language were used against employees who chose to remain on the job, tacks or small nails were thrown onto the driveway and parking area, pickets beat on cars as they were being driven away, a telephone line was cut, the superintendent was followed from work, accosted and threatened at his son's apartment, and pickets pounded on the Hoar construction shack and painted signs on one of its walls.

On or about November 16, 1964, appellee filed an unfair labor practice action with the National Labor Relations Board against appellants. Thereafter, the National Labor Relations Board caused a suit for injunction to be filed against the unions under 29 U.S.C.A. § 160(1) and the strike finally ended on December 23, 1964, with the issuance of an injunction by the District Court. Subsequently, on April 13, 1965, pursuant to a recommended order of a Trial Examiner of the National Labor Relations Board, the unions agreed to cease and desist from further violations of the secondary boycott provision of the Taft-Hartley Act.

The jury returned a verdict in favor of appellee in the amount of $24,193.21. Appellants promptly moved for a new trial which the trial judge agreed to grant unless appellee consented to a remittitur of 40% of the jury verdict. Appellee consented and judgment was entered in the amount of $15,000.

It is clear that the reason for the strike was that appellee's subcontractors had employed nonunion electrical and plumbing workers. In short, the strike was a secondary boycott in violation of Section 8(b) (4) of the National Labor Relations Act. See Denver Building & Construction Trades Council v. N L R B, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284 (1951). We do not understand appellants to contend seriously to the contrary. Appellants do assert, however, that the jury verdict was excessive and, more specifically, that attorney fees and punitive damages were not properly an element of recovery. We disagree.

■ The determinative factor in whether punitive damages are recoverable is whether Mississippi law, which authorized punitive damages for violent or willful tortious conduct,[1] such as that involved in the present case, has been pre-empted by the provisions of the National Labor Relations Act. In San Diego Building Trades Council v. Garmon, 359 U.S. 236, 247, 79 S.Ct. 773, 781, 3 L.Ed.2d 775 (1959), the Court stated the following general rule: "[W]e have allowed the States to grant compensation for the consequences, as defined by the traditional law of torts, of conduct marked by violence and imminent threats to the public order." Similarly, in United Construction Workers v. Laburnum Construction Corporation, 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025 (1954), the Court stated:

> To the extent that Congress prescribed preventive procedure against unfair labor practices, that case [Garner v. Teamsters Union, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 (1953)] recognized that the Act excluded conflicting state procedure to the same end. *To the extent,* however, *that Congress has not prescribed procedure for dealing with the consequences of tortious conduct already committed, there is no ground for concluding that existing criminal penalties or liabilities for tortious conduct have been eliminated.* (Emphasis added.) 347 U.S. at 665, 74 S.Ct. at 838.[2]

Following the rationale of *Laburnum* and *Garmon,* Section 303 of the Labor Management Relations Act of 1947, 29 U.S.C. § 187, which specifically prescribed procedure for the recovery of damages for unlawful secondary boycotts, has been held to pre-empt state common law only when peaceful boycotts are involved. Thus, in Local 20, Teamsters, etc., Union v. Morton, 377 U.S. 252, 84 S.Ct. 1253, 12 L.Ed.2d 280 (1963), the Court was careful to limit its holding as follows:

> [W]e hold that since state law has been displaced by § 303 in private damage actions based on *peaceful* union secondary activities, the District Court in this case was without authority to award punitive damages. [Emphasis added.] 377 U.S. at 261, 84 S.Ct. at 1259.

See also Gibbs v. United Mine Workers, 343 F.2d 609 (6th Cir. 1965), rev'd on other grounds, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), a secondary boycott case where punitive damages were awarded, where the Sixth Circuit reasoned:

> The Morton case decided only that where a state claim arising from a labor dispute did not rely on violence as part of the charged tortious conduct, it could not be prosecuted independently of, or pendent to, an action under the Federal Act. *In Morton there was no charge of violence to support the state common-law action.* (Emphasis added.) 343 F.2d at 615.

We conclude, therefore, that there has been no federal preemption foreclosing action under state common law in secondary boycott cases involving violent or willful tortious conduct. Since there is ample evidence in this case to support an award of punitive damages, the jury verdict is not excessive.

■ The attorney fees to which appellants object are those which appellee sustained in removing appellants' pickets and, as such, were proper items of damages. The contention that such fees are not allowable is wholly without merit. Aircraft & Engine Maintenance, etc. v. I. E. Schilling Co., 340 F.2d 286 (5th Cir. 1965), cert. denied, 382 U.S. 972, 86 S.Ct. 528, 15 L.Ed.2d 464 (January 17, 1966); Local Union 984, etc., v. Humko Co., 287 F.2d 231 (6th Cir. 1961).

---

1. See Bailey v. Richards, 236 Miss. 523, 111 So.2d 402 (1959).

2. Accord, International Union, United Automobile, etc., Workers v. Russell, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958).

Nor is there any substance to appellants' argument that there was jury prejudice. It is, of course, true that where an excessive verdict results from passion, prejudice, or caprice, a remittitur may not be employed to cure the error. See Gibbs v. United Mine Workers, 343 F.2d 609 (6th Cir. 1965), rev'd on other grounds, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). It is *not* the law, however, that merely because there is a remittitur there was jury prejudice, and this, basically, is appellants' position in the present case. Absent any other indicia of prejudice, therefore, this point must be resolved against appellants.

Finally, appellants contend that the trial court committed error in refusing to give their requested instruction relating to "informational pickets." Since the substance of appellants' instruction was given by the trial court, this contention, like the others advanced herein by appellants, is clearly without foundation.

Affirmed.