Doris R. EDWARDS, etc., Plaintiff-Appellee, Cross-Appellant,

v.

SEARS, ROEBUCK AND COMPANY et al., Defendants-Appellants, Cross-Appellees.

No. 74–1800.

United States Court of Appeals, Fifth Circuit.

April 25, 1975.

278

John F. McClure, Peter D. Kasdin, Chicago, Ill., R. W. Heidelberg, Hattiesburg, Miss., for Sears.

Rae Bryant, Gulfport, Miss., William F. Goodman, Jr., Jackson, Miss., for La Manufacture.

Jolly W. Matthews, III, Francis Zachary, Carroll H. Ingram, Hattiesburg, Miss., Bill R. Holloway, Lake Village, Ark., for Edwards.

Before AINSWORTH, GODBOLD and SIMPSON, Circuit Judges.

AINSWORTH, Circuit Judge:

Plaintiff Doris R. Edwards, as administratrix of the estate of her deceased husband, George R. Edwards, commenced this diversity civil action in United States District Court for the Southern District of Mississippi. Plaintiff sought over $3.6 million in damages under Mississippi's wrongful death statute, Code of 1942 § 1453 (now 1972 Miss.

Code Ann. § 11–7–13) against Sears, Roebuck and Company (Sears), La Manufacture Francaise Des Pneumatiques Michelin, a French corporation (Michelin), and Chrysler Corporation for the wrongful death of George R. Edwards. After an extended trial, the jury entered a verdict of $900,000 against Sears and Michelin.[1] The trial court refused defendants' motions for a new trial and judgment notwithstanding the verdict, but, finding the jury's verdict to have been "swayed by passion or prejudice," ordered the verdict reduced to $450,000. Sears and Michelin have appealed the finding of liability, and plaintiff has objected by way of cross-appeal to the trial court's reduction of damages.[2] After a deliberate and thorough examination of the briefs and the extensive record before us, we have determined that both the verdict and the trial court's reduction of damages must be reversed, and the case remanded for a new trial.

## I. The Facts

Many of the facts in this case are not in serious dispute. On February 3, 1971, George Edwards purchased four tires from Sears and had them installed on his 1970 Chrysler automobile. Pursuant to a written agreement with Sears, Michelin had manufactured the tires in question in Italy, and had delivered the tires to Sears in France. Sears imported the tires into the United States for sale to the general public, merchandising the tires under its own name as "Sears Allstate Steel-Belted Radial Tires, Sears, Roebuck & Co." Only Sears' name appeared on the tires and in Sears' advertising.

On the evening of September 7, 1971, George Edwards and his brother Karl were in Nina's Place, near Gulfport, Mississippi. The brothers were drinking whiskey and playing poker from approximately 11 p. m. to 1 or 2 a. m. when they left Nina's Place, driving northbound on Highway 49. At some time prior to 7 a. m. on the morning of September 8, the remains of Edwards' car were discovered in the neutral ground between the north and south lanes of Highway 49 about 40 miles north of Gulfport and 20 miles south of Hattiesburg. There were no witnesses to the accident.

The weather that night was clear, and no precipitation was reported. The decedent's car had been traveling north in the right lane of the two northbound lanes of Highway 49. Tire marks began in the east lane and veered to the left toward the neutral ground separating the north and southbound lanes. Measurement of the tire marks showed that the car traveled 354 feet from the beginning of the marks until it left the roadway. The auto careened through the neutral ground, clipping off small trees and saplings three to four feet above the ground, until it crashed, upside down, into a ten-inch pine tree in the neutral ground which it bent to a 45-degree angle. After leaving the roadway, the car hurtled 345 feet through the neutral ground, stopping a total of 699 feet from the point where the skid marks first started. The car was almost completely demolished; the bodies of the two men were found 25 to 30 feet from the car.[3] The left rear tire on the car was in shreds. The tread and both steel belts were missing from the tire, and pieces of the tire were strewn alongside the road. The right rear tire still held air; although it supported the car as it was towed some 18 miles to Hattiesburg, no tread remained on the tire.

There was substantial dispute at trial regarding whether the rear tires suffered from any manufacturing defect, and whether a defect, if extant, was a

1. The jury returned a verdict in favor of Chrysler Corporation, and it is not a party to this appeal.

2. This circuit has held that a remittitur is subject to appellate review. *See* United States v. 1160.96 Acres of Land, 5 Cir., 1970, 432 F.2d 910, 912; Steinberg v. Indemnity Ins. Co. of North America, 5 Cir., 1966, 364 F.2d 266, 268.

3. Although both George Edwards and his brother lost their lives in the accident, this case was prosecuted solely on behalf of the estate of George Edwards.

proximate cause of the accident. Plaintiff's expert witness testified in substance that the tires were defective. The defendants offered their own expert witnesses, who concluded the tires were not defective, and attributed the tire failure to other causes such as high speed and underinflation. There was general agreement among the experts, however, that the radial tires in question were potentially dangerous when driven at speeds in excess of 75 miles per hour while inflated to a pressure of only 24 pounds per square inch (p. s. i.). Despite this potential danger, none of the defendants notified tire purchasers that tire inflation should be increased to 28 p. s. i. if high-speed driving was contemplated.

Plaintiff further alleged that Sears and Michelin were liable for the negligent manufacture of the tires, that they were strictly liable in tort for any non-negligent defect in the tires, and that both were liable for breach of the implied warranty of merchantability attaching to the tires.[4] In addition, it was alleged that Sears' representations of its tires as being unusually reliable, durable and safe, particularly at high speeds, had been relied on by the deceased in purchasing the tires, that these representations were a basis of the bargain and created an express warranty running from the seller to the buyer,[5] the breach of which proximately caused George Edwards' death.

The asserted bases of liability were thus the following:

(1) Negligent failure to warn of the necessity for additional tire pressure at high speeds—asserted against Chrysler.

(2) Negligent manufacture of the tires—asserted against Sears and Michelin.

(3) Strict liability in tort—asserted against Sears and Michelin.

(4) Breach of express warranty—asserted against Sears.

(5) Breach of implied warranty of merchantability—asserted against Sears and Michelin.

The jury returned a general verdict against Sears and Michelin, finding damages in the amount of $900,000. The district court, in its opinion denying defendants' motion for a new trial or judgment notwithstanding the verdict, concluded the award was grossly excessive, particularly in light of the strong evidence "that Edwards' car was traveling at a speed so great as to evince wilful disregard for his own life," and the court's instruction that the jury was to reduce damages in proportion to the contributory negligence attributable to Edwards. The court concluded that the jury "was swayed by passion or prejudice and failed to respond to the [court's] instructions . . . ," and reduced the amount of damages by $450,000.[6]

---

4. Plaintiff's pleadings are not entirely clear or specific. Apparently recovery was sought for breach of the implied warranty of merchantability, Uniform Commercial Code § 2–314, 1972 Miss.Code Ann. § 75–2–314, and also for breach of the implied warranty of fitness for a particular purpose, U.C.C. § 2–315, 1972 Miss.Code Ann. § 75–2–315. The case was argued and the jury was instructed, however, only with regard to breach of an implied warranty of merchantability.

5. *See* U.C.C. § 2–313, 1972 Miss.Code Ann. § 75–2–313.

6. The relevant portion of the district court's opinon on motion for judgment n. o. v. and for a new trial is as follows:

The Court not only gave numerous instructions for the defendants on plaintiff's burden in the case, but specifically instructed that the operation of a vehicle at a greater speed than seventy miles an hour was negligence, and that if the jury believed that Edwards' car was exceeding this speed or that his tires failed due to underinflation, under-inflation being critical to safety, or for any other reason not attributable to the defendants, then it was the duty of the jury to find for the defendants. The Court also instructed the jury that if it found that plaintiff was entitled to recover and further found that Edwards was negligent in any manner that contributed to his death, then the jury must reduce the total damages in proportion to the amount of contributory negligence attributable to Edwards. The Court realizes that it is difficult for a jury subjected to lengthy, oral instructions to keep them all in mind.

## II. Jury Passion or Prejudice and the Need for a New Trial

Appellants contend that the trial court's finding that the verdict was influenced by jury passion or prejudice necessitates, in and of itself, a new trial. We believe this issue is best addressed in conjunction with appellants' closely related claim that plaintiff's counsel made deliberately prejudicial and inflammatory remarks to the jury in their closing arguments which constitute reversible error. We have concluded that the trial court's finding of both passion or prejudice as well as disregard of the court's instructions necessitates, under the facts and circumstances of this case, a new trial as to both liability and damages. Moreover, we believe the closing argument in this case was far beyond the bounds of accepted advocacy and, when coupled with the trial court's finding of passion or prejudice, such argument itself constitutes a basis for reversal.

### A. Impact of the Trial Court's Conclusions

■ It is important to recognize that this is not a case where an appellate court, reviewing only a cold record, is attempting to reanalyze a case and independently conclude that passion or prejudice on the part of the jury pervaded the verdict. Rather, in this case the trial judge, with the benefit of his participation in the trial, his observation of the witnesses and his understanding of the case, has found these elements present. It is not our province to second-guess Judge Russell's findings since "[t]he trial court's determination as to whether the verdict is the result of passion or prejudice will not be disturbed on appeal, unless the determination is clearly erroneous." 6A Moore's Federal Practice ¶ 59.-05[3], at 59–59 (1974). After our own review of the record, we cannot say Judge Russell clearly erred in this finding. Having agreed with the district court that the $900,000 verdict was improperly infected with bias or prejudice, our analysis shifts to the issue whether the impropriety could be cured by lopping $450,000 off the award, or whether a new trial is necessary.

Appellants argue that any finding of passion or prejudice automatically requires a new trial, relying on Brabham v. State of Mississippi, 5 Cir., 1938, 96 F.2d 210, cert. denied, 305 U.S. 636, 59 S.Ct. 103, 83 L.Ed. 409, where this court commented:

> Verdicts made excessive by the passion and prejudice springing from indulgence, in the jury room, in such feelings, may not be cured by a remittitur, but only by a new trial.

*Id.* 96 F.2d at 213. *See also* Gulf Coast Bldg. & Const. Trades Council v. F. R. Hoar & Son, Inc., 5 Cir., 1967, 370 F.2d 746, 749.

Although the age of the *Brabham* case does not itself weaken the holding, our subsequent cases have done so. In Cur-

---

Nonetheless, these instructions were pertinent to strong evidence, though circumstantial, that Edwards' car was traveling at a speed so great as to evince wilful disregard for his own life, whether the tires were defective or not. Undisputed evidence reflects that the Edwards' vehicle, sometime after 10:30 p. m., on the night of his accident, left a straight stretch of two, northbound paved lanes of Highway 49 south of Hattiesburg, and traveled 324 feet [sic] through a thicket of pine trees, some with a circumference of ten inches, in the median ground between the north and south bound lanes, after first leaving visible tire tracks on the highway for a distance of 345 feet, or a distance of over the length of two football fields before coming to rest upside down.

From the size of the verdict in this case, it is apparent that the jury was swayed by passion or prejudice and failed to respond to the above referred to instructions, and for these reasons the verdict as to the amount of the damages must be reduced.

The Court does not find it necessary to consider the remaining objections of the defendants, critical of instructions given or refused. Suffice it to say that under F.R. Civ.P., Rule 61, the Court finds no grounds for granting a new trial. It does find, consistent with substantial justice, that the verdict should be reduced by at least one-half to the sum of $450,000.00.

App. 1072–1073.

tis Publishing Co. v. Butts, 5 Cir., 1965, 351 F.2d 702, aff'd, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), we upheld a trial court's reduction of punitive damages from $3 million to $400,000 against a claim urged by the defendants, and accepted by Judge Rives in dissent, that the verdict was the result of passion and prejudice and could not be cured by remittitur.[7] Even though then-District Judge Morgan concluded that the $3 million punitive damages award was "grossly excessive," 225 F.Supp. 916 at 920, he found no need to order a new trial. Judge Morgan noted that "[t]he guilt of the defendant was so clearly established by the evidence in the case so as to have left the jury no choice but to find the defendant liable." 225 F.Supp. at 919. In the Fifth Circuit's opinion affirming the lower court decision, the majority "wholeheartedly agree[d]" with Judge Morgan's assessment that defendant's liability was clearly established. Curtis Publishing Co. v. Butts, 351 F.2d at 707. Later in its opinion, the court noted the distinction between verdicts excessive in amount which may properly be reduced by remittitur, and those resulting from passion and prejudice, which may not be so corrected. 351 F.2d at 717–718. Since the determination of liability was demonstrably unaffected by whatever factors may have produced an excessive damages award, the court agreed a remittitur, and not a new trial, was the proper response.

An analogous case is Gorsalitz v. Olin Mathieson Chemical Corp., 5 Cir., 1970, 429 F.2d 1033, modified, 456 F.2d 180, cert. denied, 407 U.S. 921, 92 S.Ct. 2463, 32 L.Ed.2d 807 (1972). In Gorsalitz, the plaintiff had been extensively injured after contact with a high voltage transformer; "the severe disfigurement of his face was . . . constantly before the jury as mute evidence of the terrible injury he had sustained . . . ." 429 F.2d at 1044. The district court found, and we agreed, that the $1,380,000 verdict was attributable to undue sympathy and excessive compassion on the part of the jury. But we upheld the liability determination, disagreeing with the district court only as to the proper test to be applied when granting a remittitur. Even though the award of damages was improperly influenced, the court agreed after careful review that liability was properly imposed, and the remedy was that of remittitur rather than an obligatory new trial. Again, corrective action was addressed only to the damages award, for the liability determination was proper. Thus, contrary to Brabham, we believe that this circuit has no per se rule regarding the appellate court's response to a lower court's finding that a jury verdict was affected by improper elements.

The important first step in reviewing such cases is to separate the liability and damages issues. Butts and Gorsalitz demonstrate that even if the jury's verdict in its entirety was affected by undesirable factors, if the fact of liability is nonetheless fairly demonstrable, and the district court has not concluded that a new trial is necessary, it will not be blindly assumed that the liability issue was wrongly decided. A jury's finding as to liability can be binding even though its monetary award is found to be excessive or even improperly influenced—our deference to and faith in the jury system demands at least this much. Cf. Pingatore v. Montgomery Ward & Co., 6 Cir., 1969, 419 F.2d 1138, 1142–1143, cert. denied, 398 U.S. 928, 90 S.Ct. 1818, 26 L.Ed.2d 90 (1970) (grossly improper argument required new trial as to damages only; substantial evidence supported jury verdict on liability). If the passion, prejudice, caprice, undue sympathy, arbitrariness or more taints only the damage award and not the liability assessment, the proper response is a remittitur or a new trial addressed to damages alone. See Pingatore v. Montgomery Ward & Co., supra. But, if it ap-

---

7. See 351 F.2d at 731. It is interesting to note that Judge Rives cited the Brabham case in support of his contention that the exces-sive award could not be cured merely by a reduction of the award. Id., n. 40.

pears that the improper jury action, in reasonable probability, affected both the liability and damages issues, then a new trial as to both issues must be ordered.

> If the verdict is the result of passion or prejudice, or for any other reason it appears that the jury erred or abused its discretion not only on the issue of damages, but also on the issue of liability, the trial court *must* unconditionally order a new trial and cannot give the plaintiff the option to accept a lesser amount.

6A Moore's Federal Practice ¶ 59.05 [3], at 59–59 (1974).[8] (Emphasis in original.) An additional point to bear in mind is that "where there has been prejudicial error in the course of a trial, remittitur is not a proper remedy, but a new trial should be granted." International Paper Co. v. Busby, 5 Cir., 1950, 182 F.2d 790, 792.

■ With these standards in mind, we turn to the present case. The liability issue in this case was hard fought and closely contested. Defendants presented substantial expert and other testimony indicating that they were neither negligent nor the sellers of a defective product, and further indicating that the deceased was responsible for his own death. The district judge found, in his opinion denying motions for judgment n. o. v. and for new trial, that the jury had failed to respond to instructions which could either have exonerated the defendants or greatly mitigated their liability. See note 6, *supra*. Additionally, as discussed *infra,* we have found clear and prejudicial error in the closing arguments of plaintiff's counsel which unduly

influenced the jury's sympathies. Thus, we are faced with a case in which the issue of liability was strongly disputed, and where the trial court itself determined the award of damages to have been grossly excessive. Furthermore, counsel's final argument to the jury was clearly prejudicial, and the trial judge himself found that the jury's verdict was swayed by passion and prejudice and that the jury failed to respond to the court's instructions. Taken together, these factors indicate that the issues of liability and damages were both improperly influenced. Under the circumstances, a new trial is mandated.

### B. Plaintiff's Closing Arguments to the Jury

Appellants have directed our attention to the statements made by opposing counsel in their final comments to the jury. We must view solicitously the claim that counsel's remarks were "deliberately prejudicial and inflammatory," faced as we are with the trial court's finding that the jury's verdict was affected by passion or prejudice.

Courts usually permit reasonable latitude in counsel's final arguments to the jury. Proficiency in jury argument, an ability to sway doubtful minds, a method of convincing others of the rightness of one's positions are important not only to successful advocacy but also to effective representation of the client's interests. But advocacy is circumscribed both by an attorney's own professional responsibility and the court's obligation to provide the parties a fair trial. Our review of counsel's argument convinces us that it so far exceeded proper bounds and

---

8. Professor McCormick noted the distinction we draw here, and pointedly elaborated on it as follows:

> For passion produced by unfair tactics or argument of the successful party, the threat of an unconditional new trial may well be the only effective preventive. In those cases, however, where the facts themselves are so appealing to the sympathies or prejudices of the average man that any jury is likely to render a swollen verdict, then, if the plaintiff's counsel has not by unfair methods whipped up the natural emotions

> of the jury, to require another trial seems questionable policy. In these cases, an opportunity to reduce the award as an alternative to a new trial might well be offered to the plaintiff wherever the trial judge is satisfied with the justness of the result on the question of liability. To insist that no verdict stand until the jury gives a verdict free of passion and prejudice both in respect to liability, and in respect to amount is in these appealing cases to expect an impossibility.

McCormick, Damages, 1935, § 19 at 80–81.

was so conducive to prejudicing the jury's verdict that it substantially affected the total fairness of the trial.

A particularly indefensible tactic was the use of the closing arguments to bring before the jury damaging facts not in evidence and never established. An important issue in the case was the inflation of Sears' tires necessary to assure safety at speeds in excess of 75 miles per hour. Sears allegedly recommended that its tires were safe at speeds up to 100 miles per hour with an inflation pressure of 24 p. s. i. One Sears' manual stated that the Sears' tires had been driven 1,000 miles at 110 miles per hour to assure owners of high-speed safety. Plaintiff presented evidence, however, tending to prove that Sears had never run the high-speed test referred to in Sears' owner's manual, at least until after the death of George Edwards. Moreover, the bulk of the expert testimony was that the tire inflation pressure should be increased from 24 p. s. i. to 28 p. s. i. for speeds in excess of 75 miles per hour to avoid danger. The issues of the presence or absence of test data to substantiate Sears' claims and the propriety of Sears' tire inflation recommendations were thus very important. In closing argument, plaintiff's counsel told the jury that a Sears representative, George Vaught, had stated that the claims and recommendations in Sears' manuals had been recognized by the company to be false, and that Sears had therefore taken them off the market after George Edwards' death. Sears vigorously asserts that at no time did Vaught make this critical statement attributed to him, and our own review of Vaught's testimony substantiates this claim. Indeed, plaintiff does not contend that Vaught did in fact testify that the manuals were removed from the market.[9]

---

9. Plaintiff's counsel's argument follows:

I want to talk with you just a few minutes about Mr. Vaught who—incidentally, I think George Vaught is an honest man—he told you quite frankly that he—that although this was in his department he wouldn't approve these claims, that he would not have approved them. Those are warranties and claims and representations made to George Edwards. They were revised in 1968. Now Mr. Vaught was frank and honest enough to tell you that even though they were revised that they didn't come back through his department. And I've forgotten whether it was me or the Judge or somebody said to him, "Well, what happened?" or something and he said "Well, this just points up a flaw in our system." It took the death of George Edwards for somebody in Sears to review this manual, because Mr. Vaught didn't even know about it, he said, although it was his duty in that large corporation. *But after the death of George Edwards, with this manual, Mr. Vaught was frank and honest enough to say to you that he took it off the market, took it out of the stores.* He was frank and honest enough to say to you that he wouldn't have approved it. He was frank and honest enough to say to you that "That's just a flaw in our system." But George Edwards' death has corrected it. They now—. I won't say that he said they now come back to his department, but I got the impression—you saw him testify—I got the impression that at least the death

of George Edwards and this manual had rectified a large corporation in its activities. App. 971 (emphasis added).

Now what happened? George Vaught, who is Mr. Sears Roebuck & Company as far as this lawsuit is concerned, and an honest man. He represented Sears; he binds Sears. He testified from the witness stand that in all of his years tenure he didn't have the first test to back that up. And the Court will instruct you in a few minutes if they make these claims down here about 110 miles an hour for 40,000 miles and they don't have the tests to back them up, and the tire fails before it goes under those conditions, then you're to return a verdict for George Edwards' family.

George Vaught wouldn't tell a story about it. *George Vaught said that there wasn't anything in this Owner's Manual he'd approve, but he did say that there was an inherent weakness in the system; that it took the death of George Edwards to get this pamphlet off the market.* How many other lives this one death has saved I don't know, but it didn't save George Edwards because he's dead, *but you can't get this Owner's Manual any more. It's off the market 'cause it's not true.* It can't be backed up. It didn't live up to it. . . . App. 1009–1010 (emphasis added.)

So in this particular case all I can say to you is that Sears Roebuck & Company and Michelin stand before you today and they have said, "We are guilty. We are guilty because we said things we didn't mean to

This untrue "admission," injected into jury argument without any proper basis whatever, was grossly improper and clearly prejudicial. Where placing material facts not in evidence before the jury in final argument substantially prejudices a party, reversal is required. *See especially* Rommel-McFerran Co. v. Local Union No. 369, 6 Cir., 1966, 361 F.2d 658 ("vital concession" improperly placed before jury in final argument); *see also* Berguido v. Eastern Air Lines, E.D.Pa., 1964, 35 F.R.D. 200, 209–212.

In addition, counsel discussed with the jury the value which his own son would place on his father's life,[10] played on counsel's personal association with the deceased,[11] evoked the image of deceased's children crying at graveside and forlornly awaiting the return of their father,[12] and urged upon the jury the need for retributive payments from defendants.[13] We need not and do not decide

say. We said things we couldn't prove. We said things we didn't have any tests to back up. We put tire recommendations out that every authority in the United States says won't work. Not enough—not enough warning." *Sears stands before you today—this jury—and says, "We are guilty. We admit it." George Vaught said it— "We just didn't have the tests. We just couldn't prove the claims."*

And you know what they do? You know what they attempt to do? They attempt to give excuses. They attempt to give excuses. They bring the experts. They bring everybody to offer you some kind of excuse after they already pled guilty and said, "We did it."

App. 1013 (emphasis added).

Plaintiff's counsel attempted on a number of occasions to determine whether the owner's manual was withdrawn from the market. Although Vaught testified that he did not participate in the withdrawal of the pamphlet, App. 269, defense counsel made timely objections, which were sustained by the court, to further inquiries about whether the manual was withdrawn by Sears. *E. g.,* App. 269, 289, 290, 291–292. Even if Vaught had testified that the manuals were withdrawn, the receipt of such evidence of post-accident changes or corrective measures to demonstrate negligence would, of course, itself constitute prejudicial error. Columbia & P. S. R. R. v. Hawthorne, 144 U.S. 202, 12 S.Ct. 591, 36 L.Ed. 405 (1892); Catholic Diocese of Natchez-Jackson v. Jaquith, Miss., 1969, 224 So.2d 216, 224 and cases cited; 2 Wigmore on Evidence § 283(4) (3d ed. 1940); Annot., Precautions After Accident, 64 A.L.R.2d 1296 (1957).

**10.** Counsel said:

You will decide what is the dollar value of the loss of a husband and a father, one who earns and provides, loves, guides, comforts, consoles, protects and even punishes children. Now my partner, Mr. Ingram, has a little six year old boy who probably couldn't and wouldn't know enough about the value of money to know what price he might want to put on a daddy, but I don't believe my sixteen year old would take three million dollars for me—that may sound selfish, but he knows the value of money, but I believe he'd rather have me.

App. 967.

**11.** Further, counsel said:

Now I feel a heavy burden right now, and I think all of you know that. I feel the heavy burden because this young redheaded lawyer has to close this argument. This young lawyer has to say the last things that will be said for Doris Edwards, the widow of George Edwards. And the last thing that can be said for that baby that's asleep there. And the last thing for this little girl that can be said. So I feel a heavy burden. I feel a heavy burden because George Edwards was my friend from Seminary; that we grew up together and we were friends for a long time.

App. 1006.

**12.** Counsel argued:

Not one person that's been on this witness stand in nine days will approve those claims. Not one. Didn't make any tests until after George is dead and in the grave. My goodness, they ought to have been at the grave to hear that child cry and say, "I want my Daddy" and to watch that child wait on the doorsteps of its home for its Daddy to return. But they weren't there because they had sold the tires. Maybe after this case—maybe after this one they won't be able to make those claims. Maybe there won't be many more children sitting on the doorstep waiting for Daddy to come home, and he never comes home because they couldn't back up what was in that Owner's Manual.

App. 1014.

**13.** Finally, counsel urged the jury:

Now I say to you when every expert says you ought to have four more p. s. i. above 75, and Sears says you ought to have only 24 up to 100, and I say to you when they make the 40,000 miles at 110 miles a lie without failure the tread body would separate—when they say those things to you they're playing games—playing games with human life. And they played a ruthless,

whether, individually, these remarks created inherent unfairness. Such remarks so permeated counsel's argument, and were so calculated to prejudice the defendants, that in the context of a trial court's finding of jury passion or prejudice, we cannot deem them harmless error.

Plaintiff's counsel do not seriously urge that their remarks were fair and proper, and they could not reasonably do so. Rather, they maintain that since much of the argument was not objected to, this court cannot consider the error on appeal. This misconstrues the court's prerogatives on review—we always possess the power to consider errors to which no objection was made. But a healthy regard for the necessity and desirability of having errors corrected at trial rather than on appeal leads us to exercise that power only in exceptional cases where the interest of substantial justice is at stake. See Hormel v. Helvering, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941); Fort Worth & Denver R. Co. v. Harris, 5 Cir., 1956, 230 F.2d 680, 682–683; Colonial Refrigerated Transportation, Inc. v. Mitchell, 5 Cir., 1968, 403 F.2d 541, 552; Dowell, Inc. v. Jowers, 5 Cir., 1948, 166 F.2d 214, 221, cert. denied, 334 U.S. 832, 68 S.Ct. 1346, 92 L.Ed. 1759. See Fed.R.Civ.P. 61, which provides in part: "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." We believe the error in final argument was of such magnitude, however, particularly in the circumstances of this case, as to have seriously prejudiced defendants' right to a fair trial, and the error must be corrected and a new trial required even in the absence of timely objection. See San Antonio v. Timko, 2 Cir., 1966, 368 F.2d 983, 986; Klotz v. Sears, Roebuck & Co., 7 Cir., 1959, 267 F.2d 53, 55, cert. denied, 361 U.S. 877, 80 S.Ct. 141, 4 L.Ed.2d 114; Theriot v. Mercer, 5 Cir., 1959, 262 F.2d 754, cert. denied, 359 U.S. 983, 79 S.Ct. 941, 3 L.Ed.2d 933; F. W. Woolworth Co. v. Wilson, 5 Cir., 1934, 74 F.2d 439, 442–443. See also New York Central R. Co. v. Johnson, 279 U.S. 310, 318–319, 49 S.Ct. 300, 303–304, 73 L.Ed. 706 (1929). We emphasize, however, our continued reluctance to address for the first time on review errors which the trial court was not given an opportunity to consider and correct. Our disinclination to review such claims is especial when the errors assertedly lie in counsel's closing remarks. The present case, however, requires that we give cognizance to appellants' contention in order to avoid a miscarriage of justice.

> Rules of practice and procedure are devised to promote the ends of justice, not to defeat them. A rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with this policy. Orderly rules of procedure do not require sacrifice of the rules of fundamental justice. Hormel v. Helvering, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941).

### III.   The Theories of Liability

### A.   Negligent Failure to Warn

In its Reply Brief, Michelin for the first time asserts error in the district

horrible, mistaken game on George Edwards' life. Why? For the sale of tires. Put that air pressure down there 24 so they'll ride soft and you'll sell them tires. Put those ads on the television. Put those pamphlets out without any claim. Playing games with human life—except it caught them in this case. It caught them in this case.

.   .   .   .   .

I say to you they got the profit off the tires. Pay the lady and the children for his death. Pay the children and the lady for his death—for his thirty-three productive years. They'd rather have George. They'd rather have him here. But they don't, so pay them. Pay them. So that Sears would remember and Michelin would remember that the next time they write something down they'd be able to half way back it up. Thank you.

App. 1013–1014.

court's failure to instruct the jury that Michelin had no duty to warn Edwards of the proper tire inflation necessary for high-speed driving. Michelin's theory is that, as a party totally unrelated to and uninvolved in the merchandising of tires, its duty only extended so far as to properly design, construct and manufacture the tires. Since Sears occupies the positions of both manufacturer and distributor as to the American public, Michelin has no knowledge of or control over the conditions under which its tires may be used. Under the particular facts of the relationship between Sears and Michelin,[14] only the tire distributor (Sears) or the car manufacturer had a reasonable opportunity to warn consumers about the necessary precautions in operating tires non-negligently and non-defectively manufactured. In sum, Michelin contends that, on the facts of this case, it had no duty to warn consumers regarding the vagaries of inflation, weights, speeds, and uses involved in driving with tires otherwise free from defect or danger. There being no duty, of course, there can be no breach.

This argument has some merit, but it is inappropriate at this stage. First, Michelin never requested such an instruction below, so it can hardly be contended the trial court erred in not giving the instruction. Second, the case was submitted to the jury on this no warning issue only as to Chrysler. There will be time enough to address this issue when raised in its proper context at a new trial. For a discussion on the duty to warn issue, see 1 Frumer & Friedman, Products Liability §§ 8.01 to 8.05[2].

## B. Negligent Manufacture

Michelin and Sears contend there was insufficient evidence of a de-

fect resulting from negligent manufacturing to allow a jury to so find. They contend they were entitled to a directed verdict or judgment notwithstanding the verdict. This argument is really premised, however, on appellants' contention, rejected *infra,* that the trial court erred in admitting expert testimony by plaintiff's witness Strader. Since we have concluded Strader's testimony was properly admitted, and because the trial court applied the proper test in assessing defendants' motions, *see* Boeing Company v. Shipman, 5 Cir., 1969, 411 F.2d 365, 374–375 (*en banc),* we cannot conclude it erred in its rulings. *Cf.* Grey v. Hayes-Sammons Chemical Co., 5 Cir., 1962, 310 F.2d 291, 302.

Michelin addresses another issue related to this theory of liability, contending *res ipsa loquitur* is inapplicable to tire blowout cases, and asserting that the trial court's instruction was not strong enough in informing the jury that negligence could not be inferred merely from the fact an accident occurred. A number of courts have held the *res ipsa* doctrine to be inappropriate or inapplicable in cases of tire blowouts. Markwell v. General Tire and Rubber Co., 7 Cir., 1966, 367 F.2d 748, 750; United States Rubber Co. v. Bauer, 8 Cir., 1963, 319 F.2d 463; Senter v. B. F. Goodrich Co., D.Colo., 1954, 127 F.Supp. 705. Moreover, the Mississippi Supreme Court has consistently held that "the doctrine of res ipsa loquitur should be strictly limited and cautiously applied." Clark v. Vardaman Manufacturing Co., 1964, 249 Miss. 42, 162 So.2d 857, 858 and cases cited. Thus, we agree that *res ipsa* has no place in this case. We disagree, however, with the assertion that Judge Russell's instruction was inadequate. His instruction[15] properly and directly in-

---

14. Sears has never announced to the American public the fact that Sears tires are in fact Michelin tires. It is conceded that the deceased had no knowledge of Michelin's role in manufacturing the tires at the time of purchase; the fact was not adduced until the discovery stage of this proceeding.

15. The trial court's instruction was as follows:
    The Court instructs you for the defendants Sears and Michelin that the mere fact

that the accident occurred and George Edwards was killed of itself alone constitutes no evidence of any negligence or breach of any other duty by the defendants Sears and Michelin, and does not raise a presumption that it was due to any act of negligence or other breach of duty by the defendants Sears and Michelin, but the law casts the burden on the plaintiff to prove her case by a preponderance of the credible evidence,

formed the jury that the accident in question constituted no evidence of any negligence on the part of Sears or Michelin.

## C. Strict Liability

Prior to 1966, Mississippi tort law still required privity of contract with the manufacturer of a product as a prerequisite for establishing liability in negligence or warranty actions. Mississippi stood alone in its rejection of MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050 (1916), and its progeny, which had effectively eliminated privity of contract as a defense to a negligence action. In 1966, however, the Mississippi Supreme Court took a long leap forward, rejecting its pre-*MacPherson* stance and embracing strict liability in tort. State Stove Mfg. Co. v. Hodges, Miss., 1966, 189 So.2d 113, cert. denied, 386 U.S. 912, 87 S.Ct. 860, 17 L.Ed.2d 784 (1967). In *State Stove,* the court adopted Section 402A of the Restatement of Torts Second as the proper standard of a manufacturer's liability to consumers injured by defectively made products. Section 402A imposes liability upon the manufacturer or seller if the product left the seller's hands "in a defective condition unreasonably dangerous to the user or consumer or to his property" and such defect causes harm to the consumer, provided that the product reaches the user or consumer "without substantial change in the condition in which it is sold."

Neither Sears nor Michelin questions the applicability of the strict liability theory to this case, and the proper formulation of the liability standard is not at issue. Rather, appellants contend that a proper application of Section 402A necessitates a conclusion they have no liability to the plaintiff. Specifically, it is claimed (1) that there was insufficient proof establishing any unreasonably dangerous defect in the tires when manufactured, and (2) that decedent's misuse of the tires precludes imposing liability on appellants.

■ (1) The inadequacy of proof argument is dealt with in Michelin's brief in conjunction with its claim that Charles Strader, plaintiff's expert witness, was not qualified to express expert opinions in support of plaintiff's case. But to accept this contention, that there was a total lack of evidence supporting plaintiff's claim, we must first find that Strader should not have been allowed to testify. We have decided, however, in another part of this opinion, that the trial court did not abuse its discretion in admitting Strader's testimony. Without detailing plaintiff's and appellants' evidence indicating and rejecting the likelihood the tires were defective, suffice it to say that this was a classic battle of experts. The issue whether the tires were defective or unreasonably dangerous in the sense that they were not in the condition they were intended to be [16] "seems more factual, of the kind the jury is accustomed to handling." Wade, Strict Tort Liability, 44 Miss.L.J. 825, 838 (1973). We have examined the conflicting evidence in this case and have concluded, as did Judge Russell, that there was sufficient evidence to make this issue one for the jury, and not the court. Boeing Company v. Shipman, 5

and if she has failed to do so then and in that event it will be your sworn duty to find for the defendants Sears and Michelin. App. 1027.

16. There are three other instances in which a product can be "defective," *i. e.,* where strict liability under Section 402A is the standard of liability. First, "a product is defective when it is properly made [but] according to an unreasonably dangerous design . . . ." W. Prosser, Law of Torts § 99, at 659 (4th ed. 1971). Second, a properly made product may be defective if it is unaccompanied by instructions or precautions "required to permit the

product to remain safe for a normal length of time when handled in a normal manner." Restatement of Torts Second, Section 402A, Comment *g.* Third, a manufacturer may be held liable for resulting injuries when he knowingly markets an "unavoidably unsafe" product and fails to give an adequate warning of the product's potential for harm. *See* Reyes v. Wyeth Laboratories, 5 Cir., 1974, 498 F.2d 1264, cert. denied, 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688; Restatement of Torts Second, Section 402A, Comments *j* and *k.*

Cir., 1969, 411 F.2d 365, 374–375 (*en banc*). *Cf.* Ford Motor Co. v. Matthews, Miss., 1974, 291 So.2d 169, 173.

(2) The fact of an injury, of course, does not establish the presence of a defect. Thus, recovery cannot be predicated on injury alone, for linking liability to injury rather than to proof that a product is defective creates absolute rather than strict liability. In Mississippi and most jurisdictions, however, the doctrine of strict liability stops short of declaring liability in all cases where both injury and defect are proved, for "[a] product is not in a defective condition when it is safe for *normal* handling and consumption." Restatement of Torts Second, Section 402A, Comment *h* (emphasis added). Notions of foreseeability and proximate cause have been injected, in a limited way, into strict liability in order to avoid imposing excessive liability on manufacturers. Professor Prosser has noted that "the seller is entitled to expect a normal use of his product, and is not liable when it is put to an abnormal use." Thus, the seller is not liable when the product is mishandled, or used in some unusual and unforeseeable way. "The seller is entitled to have his due warnings and instructions followed; and when they are disregarded, and injury results, he is not liable." Prosser, *supra*, § 102, at 668–669.

In Ford Motor Co. v. Matthews, Miss., 1974, 291 So.2d 169, and Early-Gary, Inc. v. Walters, Miss., 1974, 294 So.2d 181, the Mississippi Supreme Court recognized this limitation on liability. These cases spoke of both "misuse" and "abnormal" or unusual use as defenses in strict liability, though no sharp distinction between the two was drawn. In Early-Gary, Inc. v. Walters, a case involving a ketchup bottle which exploded when "thumped" on the bottom, the court wrote: "To allow recovery, the chancellor had to find that appellee did not misuse the product or that the unusual use of the product was one that the manufacturer and seller were expected to 'foresee and guard against." 294 So.2d at 186. Some writers have suggested, however, that misuse should be viewed as but one aspect of abnormal use. *See* 1 Frumer & Friedman, Products Liability § 15.01, at 351; Noel, Defective Products: Abnormal Use, Contributory Negligence, and Assumption of Risk, 25 Vand. L.Rev. 93 (1972).

Misuse of a product might be found where the consumer has disregarded reasonable care and maintenance known to be necessary for the continued safety of a product, or where, in Professor Prosser's words, "due warnings and instructions" are disregarded. In the present case, the deceased had been informed of the necessity for proper mounting and inflation. Thus, proof of improper mounting [17] or unreasonably improper inflation might indicate such misuse as would exonerate appellants. Appellants did in fact introduce evidence indicating that the decedent did not maintain proper tire inflation pressure, but there was substantial evidence to the contrary clearly sufficient to create a question of fact for the jury. Because Mississippi has held that the important issue of misuse is a question of fact, Early-Gary, Inc. v. Walters, *supra*, 294 So.2d at 186, we cannot say that under the circumstances here the court erred in submitting the case to the jury. [18]

We are further urged by defendants to hold that the district judge should have granted defendants a directed verdict or a judgment n. o. v. because the evidence shows that the accident occurred as a result of decedent's driving

---

17. *Cf.* Hoover v. Montgomery Ward & Co., 528 P.2d 76 (Or.1974), holding strict liability not to be the proper standard of accountability for the seller of a nondefective tire which was negligently mounted on plaintiff's automobile.

18. Michelin, in its Reply Brief, asserts for the first time that it was entitled to an instruction that misuse is a defense to an action in strict liability, as in McDevitt v. Standard Oil of Texas, 5 Cir., 1968, 391 F.2d 364. Such an instruction was never requested at trial, however, and we therefore decline to consider this issue.

at a highly excessive speed while under the influence of alcohol. The district court did not feel that the evidence so strongly preponderated in favor of the defendant that a judgment in favor of the defendants was required as a matter of law, and we cannot say that under the test of Boeing Co. v. Shipman this assessment was incorrect. *See also* Early-Gary, Inc. v. Walters, *supra,* 294 So.2d at 186–187; Ford Motor Co. v. Matthews, *supra,* 291 So.2d 169, 175.

It is clear, however, that if the decedent was driving at an excessive speed while intoxicated his action would constitute contributory negligence, and the trial court so instructed the jury. The trial court instructed the jury that if the decedent was found to have been contributorily negligent, and if such negligence was the sole proximate cause of the accident, its verdict should be rendered in favor of defendants. The court further instructed the jury that if it found that the decedent was contributorily negligent, but that the defendants also proximately caused or contributed to George Edwards' death, damages could be recovered but must be reduced in proportion to the extent to which decedent's negligence contributed to the accident. We believe the trial court took the correct path through the thicket of strict liability and contributory negligence. While the issue has not been considered by the Mississippi Supreme Court, a noted commentator has suggested that the proper interaction between strict liability and contributory negligence "should be apparent on reflection. It is to apply a system of comparative fault of the 'pure type' and apply it to strict liability as well as to negligence."

Wade, Strict Tort Liability, 44 Miss.L.J. 825, 850 (1973).[19] Thus, the jury was correctly allowed to consider the case on a strict liability theory.

### D. Express Warranty

Plaintiff asserted that Sears, by representing its tires to be extraordinarily safe, durable and reliable in its television advertising, as well as by making claims of particular safety at high speeds in its Owner's Manual, made express warranties as to the quality of its tires. It was further contended that these warranties were a "basis of the bargain," and were relied on by the deceased in purchasing the tires. The tires' failure to conform to the warranties about them, it is claimed, gives rise to liability. *See* 1972 Miss.Code Ann. § 75–2–313.

The express warranty aspect of products liability law has been recognized and accepted at least since Baxter v. Ford Motor Co., 1932, 168 Wash. 456, 12 P.2d 409, aff'd on rehearing 15 P.2d 1118. *See* Prosser, *supra,* § 97, at 651–652. "There is strict liability for statements that prove to be false when they are made to the public in labels on the goods themselves, or in the seller's advertising, or his disseminated literature." *Id.* at 652. *See* Hansen v. Firestone Tire and Rubber Co., 6 Cir., 1960, 276 F.2d 254, and Senter v. B. F. Goodrich Co., D.Colo., 1954, 127 F.Supp. 705, holding tire manufacturers liable under a similar analysis. Sears contends, however, that an action in express warranty, even if otherwise valid, cannot be asserted under Mississippi's Wrongful Death Act.

The Mississippi wrongful death statute, 1972 Miss.Code Ann. § 11–7–13,[20]

---

**19.** Mississippi is the only state having a "pure" comparative *negligence statute which* provides that contributory negligence, even if in excess of 50 per cent, shall not bar but merely diminish any award. 1972 Miss.Code Ann. § 11–7–17.

**20.** Section 11–7–13 provides, insofar as it is relevant to this appeal, as follows:

§ 11–7–13. Actions for injuries producing death.

Whenever the death of any person shall be caused by any real wrongful or negligent act or omission, or by such unsafe machinery, way or appliances as would, if death had not ensued, have entitled the party injured or damaged thereby to maintain an action and recover damages in respect thereof, or whenever the death of any person shall be caused by the breach of any warranty, express or implied, of the purity or fitness of any foods, drugs, medicines, beverages, tobacco or any and all other articles or commodities intended for human consumption, as would, had the death not ensued, have entitled the person injured or

provides three possible bases of liability in cases where the injured person, if death had not ensued, could have maintained an action. First, suit may be brought when death is caused "by any real wrongful negligent act or omission, . . . " and second, when death is caused by any "unsafe machinery, way or appliances . . . ." Third, an action may be brought based on express or implied warranties made with regard to "the purity or fitness of any foods, drugs, medicines, beverages, tobacco or any and all other articles or commodities intended for human consumption . . ." It is contended that since the only warranty actions permitted under the statute are those relating to goods intended for human consumption, and since tires are not intended for human consumption, an action for breach of an express warranty as to tires is not an action permitted by the statute.

■ The Mississippi statute is not one of survival but creates a new and independent cause of action. Hasson Grocery Co. v. Cook, 1944, 196 Miss. 452, 17 So.2d 791, 792; Byars v. Austin, Miss., 1969, 218 So.2d 11, 15. The provision allowing recovery on a warranty theory in certain cases was added to the statute in 1952. Prior to that time, the statute had been construed to allow only tort actions to survive the decedent; actions in even implied warranty were deemed contract actions not within the wrongful death statute. Hasson Grocery Co. v.

Cook, *supra,* 17 So.2d at 792–793; Goodwin v. Misticos, 1949, 207 Miss. 361, 42 So.2d 397, 398–399, 407. Even though the wrongful death statute was subsequently amended to allow certain warranty actions, the Mississippi Supreme Court has held that the statute, being unknown to the common law, should be strictly construed and not extended beyond its terms. Smith v. Garrett, Miss., 1973, 287 So.2d 258, 260; Byars v. Austin, *supra;* Logan v. Durham, 1957, 231 Miss. 232, 95 So.2d 227, 229; Boroughs v. Oliver, 1953, 217 Miss. 280, 64 So.2d 338, 339. It is possible, then, that plaintiff's express warranty claim is not permitted by the wrongful death statute. *See also* Maraist and Barksdale, Mississippi Products Liability—A Critical Analysis, 42 Miss.L.J. 139, 190 (1972), which notes that Mississippi's wrongful death statute "narrowly limits" recovery in warranty and "fails to provide for the increased liability under the UCC."

■ We have been unable to find any Mississippi cases directly addressing this point, however. It may be that the court will reinterpret the statute to accord with the state's recent adoption of both strict liability and the Uniform Commercial Code. While we are *Erie*-bound to apply state law, we are not bound to predict state law developments when it is not necessary to do so. Since a new trial is required in any case, the parties will be able properly to consider this issue in the lower court.

made ill or damaged thereby, to maintain an action and recover damages in respect thereof, and such deceased person shall have left a widow or children or both, or husband or father or mother, or sister, or brother, the person or corporation, or both that would have been liable if death had not ensued, and the representatives of such person shall be liable for damages, notwithstanding the death, and the fact that death was instantaneous shall in no case affect the right of recovery. The action for such damages may be brought in the name of the personal representative of the deceased person for the benefit of all persons entitled under the law to recover, or by widow for the death of her husband, or by the husband for the death of the wife, or by the parent for the death of a child, or in the name of a child, or in the name of a child for the death of a parent, or by a brother for the death of a sister, or by a sister for the death of a brother, or by a sister for the death of a sister, or a brother for the death of a brother, or all parties interested may join in the suit, and there shall be but one suit for the same death which shall ensue for the benefit of all parties concerned, but the determination of such suit shall not bar another action unless it be decided on its merits. In such action the party or parties suing shall recover such damages as the jury may determine to be just, taking into consideration all the damages of every kind to the decedent and all damages of every kind to any and all parties interested in the suit. . . .

### E. Implied Warranty

Plaintiff also sought recovery for breach of the implied warranty of merchantability attaching to the goods. *See* 1972 Miss.Code Ann. § 75–2–314. Michelin and Sears claim that this warranty action also is not permitted by the wrongful death statute. As we did with the express warranty issue, we leave this issue to be properly considered by the court prior to the second trial.

### IV. The Admissibility of Strader's Testimony

Sears and Michelin have vigorously contested the propriety of admitting the testimony of Charles Strader, plaintiff's expert witness. Strader, for the last six years, has been a consulting tire analyst in charge of the Tire Failure Analysis Department of Shilstone Laboratories of Houston, Texas, an independent testing laboratory. He had previously worked for Firestone Tire and Rubber Company, and had spent six years in the recapping business. He has a total of thirty-five to thirty-eight years of experience in the tire business, and has examined several thousand tires for tire failure. Moreover, Strader has previously testified at trials as an expert witness.

▮▮▮ Appellants have argued at length why Strader should not have been deemed an expert and allowed to express an expert opinion. Many Mississippi cases have been cited to us and discussed. The propriety of admitting expert testimony in a federal trial, however, is governed by federal law, and federal law narrowly limits an appellate court's ability to second-guess trial courts on questions of admissibility of expert testimony. "[T]he trial judge has broad discretion in the matter of the admission or exclusion of expert evidence, and his action is to be sustained unless manifestly erroneous." Salem v. United States Lines Co., 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962) (citation omit-

ted). The rule as stated in this circuit is that "[t]he expert qualifications of a witness is a question for the trial judge, whose discretion is conclusive unless clearly erroneous as a matter of law." United States v. 41 Cases, More or Less, 5 Cir., 1970, 420 F.2d 1126, 1130–1131.[21] *See also* Crawford v. Worth, 5 Cir., 1971, 447 F.2d 738, 740–741, where we applied this rule to a Mississippi diversity case. Appellants also rely on this court's opinion in Ward v. Hobart Manuf. Co., 5 Cir., 1971, 450 F.2d 1176. But even in *Ward*, the facts of which are clearly distinguishable from the present case, we adverted to the "broad discretion vested in the trial court in passing upon the qualifications of an expert . . . ." 450 F.2d at 1182. Since we perceive no clear or manifest error in finding Strader qualified to testify as an expert, we cannot say the trial court abused its discretion in admitting Strader's testimony.

### V. The Propriety of the Damages Instruction

Over appellants' objection, the trial court instructed the jury on the damages issue as follows:

> . . . in calculating the amount of such damages, if any, you may take into consideration all the testimony concerning the pecuniary losses, if any, sustained by the widow and children by the death of George Edwards, including the loss of association, society, companionship, *support*, love and affection, loss of care and moral training of the children during their minority, *and* the *present net cash value of the life of the deceased.*

App. 1029 (emphasis added). Appellants contend that in permitting plaintiffs to recover the net cash value of the decedent's life and, in addition, to recover damages for the loss of financial support to the decedent's widow and children, the court allowed the jury to increase or pyramid damages.

---

**21.** The Mississippi decisions on this point are the same; the state uses an abuse of discretion standard in reviewing the admissibility of expert testimony. *See* Hamilton Fixture Co.,

Inc. v. Anderson, Miss., 1973, 285 So.2d 744, 748; Bynum v. Mandrel Industries, Inc., Miss., 1970, 241 So.2d 629, 633.

In New Deemer Manuf. Co. v. Alexander, 1920, 122 Miss. 859, 85 So. 104, the court reviewed an instruction which allowed recovery for the present value of the amount the deceased would have earned in his life *and* the value of the maintenance and support the deceased would have given his wife and children. The court held this instruction erroneous in that it pyramided the items of recovery and led to double damages by "making the monetary value of his life not only what he would have earned, without diminution for his own support, but also such additional amount as it would take to support his wife and children." 85 So. at 107. The holding in this case was reaffirmed in Hines v. Moore, 1921, 124 Miss. 500, 87 So. 1, 3. In Gulf, M. & N. R. Co. v. Graham, Miss., 1928, 153 Miss. 72, 117 So. 881, this approach was reiterated, the court holding that a mother of the deceased could not recover both the net cash value of her son's life as well as any contributions the son "might have made for the *support* of his mother . . . ." 117 So. at 884 (emphasis added). Finally, in Galloway v. Korzekwa, N.D.Miss., 1972, 346 F.Supp. 1086, it was noted that once the deceased's family recovered the net cash value of his life, "[F]or the court to award any amount for the support and/or gratuities which Galloway's surviving wife and son might reasonably have expected to receive from him had he lived, would be to pyramid damages. The Mississippi Supreme Court has held that this cannot be done." 346 F.Supp. at 1094 (citations omitted).

██ It is true, as noted by Judge Russell below, that in Oden Construction Co. v. MacPhail, Miss., 1969, 228 So.2d 586, the court noted that the damages recoverable under the wrongful death statute "include *loss of support*, as well as of association, society and companionship by his widow and young children, *together with the value of the decedent's life*. *Id.* at 590 (emphasis added). In that case, however, the possible pyramiding of damages was not an issue, nor did

the court distinguish or overrule the cases of New Deemer Mfg. Co. v. Alexander, *supra*, and Gulf, M. & N. R. Co. v. Graham, *supra*. It may be consistent with the statute [22] to allow recovery for both loss of support and net cash value. Nonetheless, when faced by at least three state supreme court cases on the specific issue in question, the dictates of *Erie* are binding on us. Because whatever support the deceased's family would have received is included in the net cash of his future earnings, and because decisions of the highest state court clearly indicate that the instruction in question was improper, we conclude that the court erred in its instruction on damages.

## VI. Admissibility of Evidence Regarding the Deceased's Income

Over Sears' objections, plaintiff introduced copies of the joint tax returns of Mr. and Mrs. Edwards for the calendar years of 1970 and 1971. Plaintiff had not availed herself of the provisions of I.R.C. § 6103(a), 26 U.S.C. § 6103(a), and Reg. § 301.6103(a)–1(c)(1)(iii) (1974), which entitle her to obtain certified copies of the returns. The 1971 return showed joint taxable income of $37,562.24, although the deceased's wife testified that some of the income was attributable to her alone. Based on the tax returns and other records and documents not in evidence, plaintiff's expert witness, Dr. Vreeland, gave his opinion as to the net cash value of the decedent's life, although he conceded he was unable to make a valid analysis solely upon the documents in evidence. Sears claims that the best evidence rule was violated by allowing the tax return copies to be introduced, and that this error was compounded by allowing Dr. Vreeland to testify on the basis of this evidence and other documents not introduced into evidence.

██ The Best Evidence Rule requires that "in proving the terms of a writing, where the terms are material, the original writing must be produced

22. See note 21 *supra*.

unless it is shown to be unavailable for some reason other than the serious fault of the proponent." McCormick on Evidence § 230, at 560 (2d ed. 1972). We have previously noted that the rule is "an old rule, developed in a different context," Development Corp. of America v. United Bonding Ins. Co., 5 Cir., 1969, 413 F.2d 823, 825, cert. denied, 396 U.S. 957, 90 S.Ct. 430, 24 L.Ed.2d 422, and the burdens it places on litigants are "probably not worth imposing when risks of inaccuracy are reduced to a minimum by the offer of a mechanically reproduced copy." McCormick on Evidence § 236, at 569. One factor independently justifying the admission of the evidence is that Mrs. Edwards herself testified to the amount and nature of the income reflected on the returns after Judge Russell first refused to admit the copies into evidence. After Mrs. Edwards' testimony, the copies were admitted. With direct testimony in evidence as to the Edwards' tax records, the copies were thus merely corroborative and thus admissible. Sears relies on Greenbaum v. United States, 9 Cir., 1935, 80 F.2d 113, for the proposition that reversible error was committed in the introduction of the photocopies. See also United States v. Ragano, 5 Cir., 1973, 476 F.2d 410. But Greenbaum was a criminal prosecution where the Government introduced information derived from tax returns—but not the returns themselves—into evidence against the defendants. The distinction between that case and the use here in a civil case of copies corroborative of direct evidence is obvious.

One further comment on this best evidence issue. A subsequent trial in this case will be governed by the recently approved Federal Rules of Evidence. The Rules recognize that the best evidence rule is of little practical value, at least where there is no serious issue as to the accuracy and authenticity of a duplicate. Fed.R.Evid. 1003 provides:

> A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.

The Advisory Committee's Note to Rule 1003 states that the Rule is supported by Fifth Circuit cases allowing, even in criminal cases, secondary evidence in the absence of any suggestion of inaccuracy. See Myrick v. United States, 5 Cir., 1964, 332 F.2d 279; Johns v. United States, 5 Cir., 1963, 323 F.2d 421.

■ We also find no error in allowing Dr. Vreeland to testify with regard to records and documents not in evidence. An expert's references to records and material without their admission in evidence are permissible where thorough cross-examination is afforded and the records in question are readily available for inspection by the other parties. See Harris v. United States, 5 Cir., 1966, 356 F.2d 582, 585; Azcona v. United States, 5 Cir., 1958, 257 F.2d 462, 466.

## VII. Other Contentions

■ Michelin asserts two contentions which we will discuss briefly. First, Michelin contends that it was denied due process when a Mr. Bloor was not allowed as a representative of Michelin to remain in the court during all of the plaintiff's testimony. Michelin's desire to have Mr. Bloor in court is understandable, since Bloor was later to testify as an expert witness for Michelin. Since Michelin had its attorney and another representative in court, the due process claim is meritless. We think the unusual circumstances surrounding this incident provide an adequate basis for Judge Russell's action, though we perceive no need for Bloor's exclusion at a subsequent trial.

■ Finally, Michelin contends that the court abused its discretion in not utilizing special verdicts under Fed. R.Civ.P. 49. Michelin's concern is understandable, since under an indemnity contract with Sears, it could be ultimately liable should its tires be found defective or negligently made. However, it might not be obligated to pay a judgment

should it result from a finding of negligent failure to warn or a breach of an express warranty by Sears. Nonetheless, Rule 49 is permissive and we cannot say the court abused its discretion in not submitting to the jury special forms or interrogatories addressed not to the fact of liability itself but rather to the theory or theories upon which the finding was premised. *See* Miskell v. Southern Food Co., 5 Cir., 1971, 439 F.2d 790, 792.

Reversed.